**Affirmed as Modified and Opinion Filed July 2, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00939-CR**

**BRIAN ALLAN KOHLER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 18-10621-86-F**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Miskel

Brian Allan Kohler appeals the trial court's judgment convicting him of first-degree felony sexual assault of a child. The jury found him guilty and assessed his punishment at eighty years of imprisonment and a fine of $10,000.

Kohler raises the following seven issues on appeal:

(1) The evidence was insufficient to prove that the victim was under seventeen years of age at the time of the offense;

(2) The evidence was insufficient to prove the child's identity because "Ellis" is a pseudonym, and the victim's identity was never legally established at trial;

(3) The trial court erred when it denied Kohler's motion to suppress the one-party consent call recording because the complainant was acting as an agent of the State in violation of his Fifth Amendment rights;

(4) The trial court erred when it denied Kohler's motion to suppress the one-party consent call recording because the recording of the phone call was illegal under Florida law;

(5) The trial court erred when it failed to submit a verdict form authorizing a separate finding by the jury on the incest "enhancement";

(6) The trial court erred in assessing punishment at eighty years because the jury did not make a separate affirmative finding on the incest enhancement; and

(7) The State made improper comments about Kohler's choice not to testify at trial.

We overrule each of Kohler's issues:  the evidence was sufficient; his Fifth Amendment issue was inadequately briefed; the recorded phone call was legal under Texas and federal law; Kohler did not suffer egregious harm due to the jury charge; the indictment, jury charge and verdict collectively indicate a jury finding of prohibited sexual conduct; and Kohler's trial objection to the State's comments failed to comport with his argument on appeal and, regardless, the State's comments were not improper.  Our review of the record also indicates that the trial court's judgment contains errors.

We modify the judgment and affirm the trial court's judgment as modified.

## I. Background

Ellis[1] was born in Florida and primarily lived with Kohler, who is her biological father, and her older brother. According to Ellis, Kohler began to sexually abuse Ellis in Florida when she was nine years old, touching her breasts and vagina.

The family moved to Wisconsin when Ellis was about ten years old. Kohler began performing oral sex on Ellis, forcing her to touch his penis, and touching her vagina, chest or bottom several times a week. He would encourage and assure her and, if she was hesitant, he sometimes would offer her money or candy or allow her to see her friends in exchange for her cooperation.

While in Wisconsin, Kohler met and later married Andrea, who also had a son. Approximately three years after moving to Wisconsin, the family moved to Richardson, Texas, when Ellis was about twelve years old. Ellis attended seventh through ninth grade in Richardson. Andrea urged Kohler to adopt her son, and he agreed. Ellis and her biological brother were interviewed in Texas as part of the adoption process, and a home study was performed. The court approved the adoption.

Before the beginning of Ellis's sophomore year of high school, the family moved to Terrell where they remodeled a home; however, Ellis's bedroom did not have a door in spite of her repeated requests that Kohler install one. While the family resided in Texas, Andrea periodically worked from home or at a daycare and also at

---

[1]Ellis is a pseudonym for the victim's legal name.

–3–

several retail jobs, often staying until nine or ten o'clock at night. Kohler also had an erratic work schedule, but witnesses disputed the nature and timing of his employment. Ellis stated that, while living in Terrell, Kohler was often unemployed and was responsible for the children while Andrea was at work. However, Kohler's son stated that Kohler worked in the oil industry and often worked long days, and Kohler's friend also testified that, between 2007 and 2014, both he and Kohler worked extremely long hours at various oil companies and were sometimes in the office, sometimes on the phone, and sometimes on the road.

Kohler continued his abuse of Ellis in Texas. While residing in Richardson, he first attempted to make Ellis perform oral sex on him. He also gave her a vibrating dildo as a gift, which he then sometimes used with her. Kohler began having intercourse with Ellis, touching or penetrating her three or four times per week. Ellis also watched pornography with Kohler. She did not tell anyone about the abuse because she did not feel she had anyone she could tell.

During this time, Ellis kept multiple diaries, including an email diary. In one entry, she was angry at Kohler for not permitting her to see her friends that day, and she referred to herself as his "sex slave." As a young teenager, Ellis began experiencing mental health issues and had thoughts of harming herself. At the age of thirteen, she attempted to commit suicide. She spoke to a psychologist about her suicide attempt but did not mention experiencing sexual assault.

After they moved to Terrell, the sexual abuse continued about three or four times per week. Ellis became friends with Peyton Mulkey at school. Ellis told Peyton about the abuse but asked her not to tell anyone because Ellis was scared that she might have to leave Terrell and her new friends. She was also concerned about "breaking Andrea's heart" and about what would happen to her and her brother and stepbrother.

Kohler attempted romantic gestures, forcing Ellis to take bubble baths with him twice and occasionally trying to have candlelit dinners with Ellis if they were home alone. Ellis stated that she was uncomfortable with these gestures but feared what would happen if she were to "push back," so she decided to just "get it over with." When Ellis tried to talk to Kohler about the abuse, he would either just act "babyish" and say it was okay or would be more serious and tell Ellis that she "would get in a lot of trouble" if she said anything.

Ellis was sixteen years old during her senior year of high school because she was eligible to graduate early due to her participation in a dual credit program. In late May 2013, a few weeks before her seventeenth birthday on June 5 and graduation on June 6, Ellis heard Kohler walking up the creaky stairs when no one else was home. Kohler entered her bedroom and had intercourse with Ellis. Ellis described the details of the incident, stating that she just wanted "to get it over with" and did not want him in her room at all. After this sexual assault and a night or so before graduation, Ellis called Peyton gasping and sobbing that she needed a

pregnancy test. The indictment charged Kohler with sexual assault of a child based on this incident.

Kohler's sexual abuse of Ellis stopped when Ellis moved away at the age of seventeen. Afterward, Kohler and Andrea divorced. While they were separated, however, Kohler began dating another woman named Shonda King who testified that Andrea told her that she would always be part of Kohler's life and was going to "destroy him." After ending his relationship with Shonda, Kohler moved to Florida where he became engaged to another woman. (After Kohler's arrest, Andrea contacted his fiancé to warn her about Kohler and later called her "stupid" for not breaking up with Kohler.)

Ellis married and later told her husband about the sexual abuse in April 2018. Her husband encouraged her to confide in Andrea, and both Andrea and Ellis's husband insisted that Ellis report her sexual abuse to law enforcement.

The detective investigating Ellis's complaint asked Ellis to record a phone call with Kohler to see if she could elicit a confession. Ellis consented, and the investigator explained the goal of the call and gave her some "talking points" to follow. In June 2018, Ellis made the first phone call to Kohler from the sheriff's office. In several subsequent phone calls, Kohler had varying reactions to Ellis's questions about why he had sex with her, including remaining silent, hanging up the phone (or becoming disconnected), denying it occurred, asking Ellis if she wanted to get him in trouble or if she was trying to send him to prison, and finally saying he

–6–

"just wanted to hold [her] and be close to [her], you know?" He also stated, "My escape, that's all." During the calls, Kohler became emotional and stated that he gets suicidal when he thinks about "all kinds of stuff." Kohler also told Ellis that he has cancer and that there was nothing the doctors could do about it.

Kohler was arrested for sexual assault of a child. After his arrest, he denied the allegations and told the investigator that he believed his arrest was due to a conspiracy driven by Andrea. Kohler also told the investigator that Ellis was "evil." He claimed that any sexual assault would have been committed by Andrea's brother.

During his trial, Kohler's son (Ellis's biological brother) testified on his father's behalf. He stated that he had been a little angry because he had not received any money from the sale of the Terrell home as had been agreed in exchange for his work on the house. He also said that, when he asked Ellis why she had accused Kohler, she said "it's because of the house." He implied that Ellis and Peyton had been involved in a romantic relationship. Kohler's son stated that he did not get along well with Andrea and that he believed that Andrea had pushed Kohler to adopt her own son. He further testified that Kohler worked about eighty to 100 hours per week while they were living in Texas and thought it was impossible that Kohler could have abused Ellis so often over a five-year period. He acknowledged that he had a conviction for possession of cocaine and a Class C assault.

The jury found Kohler guilty of sexual assault of a child as charged in the indictment and assessed his punishment at eighty years of imprisonment and a fine in the amount of $10,000. This appeal followed.

## II.     Sufficient Evidence of Age and Identity

In his first and second issues, Kohler argues that the evidence was insufficient (1) to prove that Ellis was under seventeen years of age at the time of the offense or (2) to establish Ellis's legal identity given Ellis is a pseudonym.

### A.     Standard of Review

Under the due process clause, a criminal conviction must be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). When reviewing the legal sufficiency of the evidence to support a criminal conviction, an appellate court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of witnesses' credibility and the weight to be given testimony. *Id.*

When the evidence presented at trial supports conflicting inferences, reviewing courts presume the jury resolved those conflicts in favor of the verdict and

defer to the jury's determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012). Evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

## B. Evidence of the Victim's Age

In his first issue, Kohler argues that the evidence was insufficient to prove that Ellis was under seventeen years old at the time of the offense. He contends that the record shows only a modicum of evidence of Ellis's age at the time of the offense, and the only evidence offered relating to her age was vague and nonspecific.

### 1. Applicable Law

A person commits the offense of sexual assault of a child if, regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A). A "child" is a person younger than 17 years of age. *Id.* at § 22.011(c)(1). Sexual assault of a child is a first-degree felony offense if the victim was the actor's descendant by blood or adoption. *See id.* at §§ 22.011(f)(1)(B), 25.02(a)(1). A person can be convicted based on the uncorroborated testimony of the child victim of a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. 38.07.

**2.      The evidence was sufficient to prove that Ellis was under seventeen years of age at the time of the offense.**

The first amended indictment alleged that, on or about May 21, 2013, Kohler intentionally and knowingly caused the penetration of Ellis's sexual organ by his sexual organ and that Ellis was under seventeen years of age at the time of the offense.

The record contains Ellis's testimony that she was 16 years old when this specific assault occurred. She testified that she remembered that the incident took place in late May and described specific details about the incident. She also stated that it occurred a few weeks before her seventeenth birthday on June 5 and her high school graduation on June 6. She stated, "I remember in this incident, it was like special to me that I had a free day to myself without having to deal with finals because this would have been after finals." Although she testified that the incident could have occurred the weekend before the May date in the first amended indictment, she was certain that it did not occur after her seventeenth birthday.

Courts are required to defer to the jury's assessment of the credibility of witnesses and the weight to give their testimony. *See Martin*, 635 S.W.3d at 679; *see also Godkin v. State*, No. 09-16-00306-CR, 2017 WL 5179787 (Tex. App.— Beaumont Nov. 8, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that reasonable factfinder could have found beyond a reasonable doubt that victim was thirteen years old at time of offense when victim testified that she

was certain she had been thirteen years old even though she sometimes had used imprecise language as to her age during her outcries and interviews).

Kohler argues that, unlike in some other cited cases, no corroborating evidence existed. However, Texas law permits a conviction based on the uncorroborated testimony of the victim of a sexual offense if the victim was seventeen years of age or younger at the time of the alleged offense. *See* CRIM. PROC. 38.07(b). In support of his argument, Kohler relies in part on *Johnson v. State*, No. 05-06-00037-CR, 2007 WL 60775 (Tex. App.—Dallas Jan 10, 2007, no pet.) (not designated for publication). In that case, this Court found that the evidence was insufficient to prove that the victim was under fourteen years of age during a particular count of aggravated sexual assault. *Id.* at *5. *Johnson* is distinguishable, however, because the indictment in that case contained a date for an alleged incident that was around four months after the victim's fourteenth birthday, and the State failed to offer any evidence in support of its argument that the incident at issue occurred while the victim was under fourteen years of age. *See Johnson*, 2007 WL 60775, at *4–5. In the present case, Ellis testified that, although she was not sure of the precise date of the offense, she was certain that the alleged offense took place before her seventeenth birthday.

The testimony about Ellis's age at the time of the incident is more than a modicum of evidence of this element and does not conclusively establish a reasonable doubt as to her age. Considering all the evidence in the light most

favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Ellis was under seventeen years of age at the time of the alleged sexual assault.  We overrule Kohler's first issue.

## C.  Evidence of the Complainant's Identity

In his second issue, Kohler argues that the evidence was insufficient because "Ellis" is a pseudonym, and Ellis's actual identity was never legally established at trial.  He contends that the identity of the victim was an issue because the offense was increased from a second-degree felony to a first-degree felony based on the allegation that the victim was his descendant by blood or adoption.  As a result, he argues there was a material variance between the allegations in the indictment and the proof at trial that deprived him of notice of the complainant's identity and also creates a double-jeopardy risk.

## 1.  Applicable Law

The law relating to the sufficiency of the evidence is based on due process. *Gollihar v. State*, 46 S.W.3d 243, 245 (Tex. Crim. App. 2001).  Due process is violated when an indictment alleges one offense but the State proves another. *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995).  As a general rule, a variance between the indictment and the evidence at trial is fatal to a conviction because due process guarantees the defendant notice of the charges against him. *Id.* However, a variance is fatal only when it is material and prejudices the defendant's substantial rights. *Gollihar*, 46 S.W.3d at 257 (adopting the federal materiality test

from *United States v. Sprick*, 233 F.3d 845 (5th Cir. 2000)). When reviewing a variance, the reviewing court must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* The object of the doctrine of variance is to avoid surprise. *Stevens*, 891 S.W.2d at 650. The fatal variance doctrine is inapplicable to pseudonym cases so long as the defendant's due process right to notice is satisfied. *Id.* at 651.

The double jeopardy clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V. The guarantee against double jeopardy affords three basic protections: (1) against prosecution a second time for the "same" offense after an acquittal; (2) against prosecution a second time for the "same" offense after a conviction; and (3) against multiple punishments for the "same" offense. *Nawaz v. State*, 663 S.W.3d 739, 743 (Tex. Crim. App. 2022).

**2.    Kohler had notice that the complainant Ellis was his daughter and is not at risk of double jeopardy because the record contains evidence of her legal name.**

Both the original and first amended indictment state that Ellis is a pseudonym for the actual name of the victim, and this pseudonym was used at trial. Given that Ellis is a pseudonym, Kohler's claim that he knows no one by the name of "Ellis" is irrelevant.

Second, at trial, Kohler did not complain that he was confused about the identity of the complainant. In fact, he does not contest that the complainant was his daughter. Kohler admits in his brief that "[w]hile the State does not formally connect the complainant's name with the pseudonym, her name exists in the record in the following limited instances:"

- During voir dire, the prosecutor asked the jury if anyone knew several witnesses; he stated the complainant's married name—her first name and her husband's last name.

- One of the two videos the State entered into evidence was labeled with the complainant's first name.

- In video evidence offered by the State, Kohler, while off-screen, referred to the complainant by name, and her name was briefly visible in a document.

- During the recorded call, the complainant stated her name for the record.

- The email the State offered into evidence stated her full name at the end where the complainant signed it like a diary entry. The complainant read the email into the record.

- During Kohler's interview with police, he stated the complainant's name.

- Kohler's counsel accidentally stated the complainant's first name once and then apologized and corrected herself.

The record shows that Ellis is the only complainant, and that Kohler knew her identity. In addition to these instances, prior to trial the State notified Kohler of its intent to use evidence of multiple, specified extraneous acts involving "Ellis," which it stated in its notice was a pseudonym. The acts, however, refer to specific dates of incidents in the "family home" and in Wisconsin and Texas. In addition, during a

–14–

pretrial conference, Kohler acknowledged that he reviewed the material turned over through discovery with his counsel, which included material containing Ellis's legal name. For example, the record contains an affidavit of an employee of the school district attended by Ellis, attesting to the attached student records, which include report cards for Ellis that list her actual name.

At trial, the indictment was read aloud to the jury, including its reference to "Ellis" as a pseudonym. Kohler called Ellis by her legal first name during the recorded phone calls admitted at trial. Ellis testified and identified Kohler as her father at trial. As noted in Kohler's brief, Ellis read one of her diary entries aloud, including her full legal name as the signature at the end of the entry. Moreover, the investigator testified that Kohler was aware of the complainant's identity during his custodial interview prior to trial and that Kohler proposed alternative theories to dispute Ellis's allegations, including that she had mental health issues and that his ex-wife, Andrea was behind the allegations.

Other witnesses acknowledged that the State was using the pseudonym of "Ellis" for the victim. During closing argument, the State told the jury without objection that the fact that Kohler was Ellis's biological father was not at issue in the case. Moreover, Kohler's counsel also stated that Ellis was Kohler's daughter during closing arguments. During the trial, Kohler did not object or claim surprise when his daughter testified and at no time did Kohler contest the fact that "Ellis" was his biological daughter.

Although Ellis is not an obvious pseudonym for her legal name, we conclude that Kohler had notice that his daughter was the complainant in this case and was not surprised or misled. *See Stevens*, 891 S.W.2d at 650–51 (determining defendant was not confused or surprised over identity of complainant at trial where indictment used pseudonym for victim's legal name and State offered no proof at trial to establish victim and person using pseudonym were the same person, but parties and trial judge used victim's legal name throughout pre-trial hearings and trial); *Nunez v. State*, No. 13-17-00671-CR, 2019 WL 1831715 at *2 (Tex. App.—Corpus Christi-Edinburg Apr. 25, 2019, pet ref'd) (mem. op.) (not designated for publication) (determining defendant did not express confusion or surprise over identity of complainants and concluding evidence was sufficient to establish the identity where pseudonyms used were children's initials, making it obvious which child was being referred to at trial).

Further, Kohler is not at risk of double jeopardy because a copy of the record in this case would bar any future attempt by the State to prosecute Kohler a second time for the same incident using a different name. *See Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001) (stating that, if prosecuted again, the defendant may avail himself of the entire record and not merely the charging instrument to avoid subsequent prosecution for the same offense). Accordingly, we conclude that Kohler had notice of the complainant's legal identity and is not at risk of being prosecuted twice for the same offense. Because a rational jury could have found the

element of identity beyond a reasonable doubt, we conclude the evidence is sufficient to support Kohler's conviction for sexual assault of a child under seventeen years of age. We overrule Kohler's second issue.

## III. No Trial Court Error in Denying Motion to Suppress One-Party Consent Call

In his third and fourth issues, Kohler argues that the trial court erred in denying his motion to suppress the recording of the phone call between Ellis and Kohler prior to Kohler's arrest because (1) Ellis was acting as an agent of the state, and (2) the phone call recording was illegal under Florida law.

### A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Randolph v. State*, 152 S.W.3d 764, 769 (Tex. App.—Dallas 2004, no pet.). This standard gives almost total deference to a trial court's determination of historical facts and applies a de novo review of the trial court's application of the law to those facts. *Falfan v. State*, No. 05-13-01124-CR, 2014 WL 2583768, at *2 (Tex. App.—Dallas June 10, 2014, no pet.) (mem. op., not designated for publication). We must sustain a trial court's decision to overrule a motion to suppress if the decision is supported by the record and is correct under any theory of law applicable to the case. *Id.* (citing *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003)).

**B.    Government Agent Claim Inadequately Briefed**

In his third issue, Kohler argues that the evidence of the recorded phone calls was inadmissible because Ellis acted as a government agent in placing the calls. He claims that Ellis was encouraged by the police to call him and was directed as to what she should say for the purpose of eliciting a confession from Kohler without his knowledge. The State responds that this Court need not determine whether Ellis was an agent of the State because Kohler's Sixth Amendment right to counsel had not yet attached.

**1.    Applicable Law**

To assert an issue on appeal, an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if he does not adequately brief that issue by not providing supporting arguments and substantive analysis. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *Avila v. Scott*, No. 05-22-00377-CV, 2023 WL 2399693 at *1 (Tex. App.—Dallas Mar. 8, 2023, no pet.) (mem. op.). Bare assertions of error, without argument or authority, waive error. *Washington v. Bank of NY*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.).

In addition, we do not address arguments raised for the first time in a reply brief. *Whitlock v. CSI Risk Mgmt., LLC*, No. 05-19-01297-CV, 2021 WL 1712215, at *1 (Tex. App.—Dallas Apr. 30, 2021, pet. denied) (mem. op.); *see also Anderson*

*Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996) (holding issue waived when authority to support argument cited for first time in reply brief).

**2.      Kohler failed to adequately brief his assertion that Ellis acted as a government agent.**

Kohler's brief simply argues that Ellis served as a government agent, but he fails to explain how that assertion affects this case. Kohler does not specify the legal right he contends was violated by the State or provide legal analysis explaining how a right was violated. Kohler does cite *Rubalcado v. State*, 424 S.W.3d 560 (Tex. Crim. App. 2014), which primarily analyzed whether the State violated a defendant's Sixth Amendment right to counsel by using an undisclosed government agent. In his brief, Kohler does not mention the Sixth Amendment or identify any other specific rights that were violated. He simply contends that the facts in the present case are similar, concluding that "Kohler's substantial rights" were affected by the admission of the evidence.

Given that *Rubalcado* dealt primarily with the Sixth Amendment, the State analyzes Kohler's argument as attempting to state a Sixth Amendment issue, arguing that Kohler's Sixth Amendment right to counsel had not attached at the time of the phone calls. The calls took place as part of the investigation prior to the commencement of the prosecution. In his reply brief, however, Kohler raises for the first time that his Fifth Amendment right to counsel pre-indictment was violated because the State used Ellis as an undisclosed government agent to deliberately elicit incriminating information. He now argues that we should apply the analysis in

–19–

*Rubalcado* to his Fifth Amendment argument and conclude that the recording should have been suppressed.

We will not make a party's argument for him. *See Avila*, 2023 WL 2399693, at *1. Kohler does not explain how his Fifth Amendment rights had attached at the time the recorded phone calls took place, or how the complainant's long-distance phone calls constituted a custodial interrogation. For example, his briefing does not show that he was in custody, that his freedom of action had been deprived in any substantial way, or that the circumstances presented a serious danger of coercion. *See Howes v. Fields*, 565 U.S. 499, 508–09 (2012); *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004). We also do not consider arguments raised for the first time in a reply brief. *Whitlock*, 2021 WL 1712215, at *1. Accordingly, we conclude that Kohler failed to adequately brief this issue and waived it on appeal. *See* TEX. R. APP. P. 38.1(i). We overrule his third issue.

## C. Recorded Call Admissible Under Texas and Federal Law

In his fourth issue, Kohler argues that the trial court erred in denying his motion to suppress the recorded phone calls between Ellis and Kohler because they were recorded in violation of Florida law—although Ellis consented to the recordings, Kohler did not. He acknowledges that Texas law requires only one party to consent to the recording; however, Kohler claims that Florida law applies because he was living in Florida when he received the calls and has a legitimate expectation of privacy under the Fourth Amendment in his home in Florida.

**1. Applicable Law**

The general rule as to conflict of laws concerning admissibility of evidence is that the law of the forum in which the judicial proceeding is held applies. *See Gonzalez v. State*, 45 S.W.3d 101, 103 (Tex. Crim. App. 2001); *Davidson v. State*, 25 S.W.3d 183, 185 (Tex. Crim. App. 2000). Article 38.23 of the Texas Code of Criminal Procedure provides that evidence is inadmissible against a defendant in a criminal trial if that evidence was obtained in violation of federal or Texas law. CRIM. PROC. art. 38.23(a). Federal and Texas laws allow a person to record a phone conversation if that person is a party to that phone call or one of the parties to the phone call has given prior consent. 18 U.S.C. § 2511(2)(c), (d); PENAL § 16.02(c)(3), (4).

**2. The recorded phone calls were admissible under Article 38.23.**

Because the phone calls between Kohler and Ellis were not obtained in violation of federal or Texas law, we conclude that the admission of this evidence was not prohibited under Article 38.23 of the Texas Code of Criminal Procedure. *See Taylor v. State*, 555 S.W.3d 765, 777 (Tex. App.—Amarillo 2018, pet ref'd) (concluding that a phone call recorded in violation of California law was admissible under Article 38.23 because it was not obtained in violation of Texas or federal law).

For purposes of comparison, the Court of Criminal Appeals has held that the relevant inquiry in determining the admissibility of oral statements made in custodial interrogation outside of Texas is whether the statements complied with Texas law,

namely Article 38.22 of the Code of Criminal Procedure as then in effect. *See Nonn v. State*, 41 S.W.3d 677, 679 (Tex. Crim. App. 2001); *Davidson*, 25 S.W.3d at 185–86 (holding that statements made in custodial interrogation in Montana in violation of the plain language of the Texas Code of Criminal Procedure were not admissible in Texas (at that time) even though they would have been admissible in Montana).

Kohler has provided no authority or legal analysis demonstrating a Fourth Amendment violation of a reasonable expectation of privacy for phone calls recorded in compliance with Texas and federal law. We conclude that the trial court did not err in denying Kohler's motion to suppress. We overrule his fourth issue.

## IV.  No Egregious Harm from Alleged Jury Charge Error

In his fifth issue, Kohler argues that the trial court erred when it failed to submit a verdict form authorizing the jury to separately find "true" or "not true" regarding the prohibited sexual conduct allegation under § 25.02 of the Texas Penal Code—that is, whether he engaged in sexual intercourse with a person he knew to be his descendant by blood or adoption. He frames the statutory incest grounds as an enhancement of a second-degree felony, rather than an element of a first-degree felony. Kohler then contends that the verdict form did not permit the jury to find Kohler guilty of the base offense of sexual assault of a child but not guilty of the enhancement, causing him egregious harm because the maximum punishment increased from twenty years to ninety-nine years as a result of the increase in the felony degree from a second-degree felony to a first-degree felony.

–22–

**A. Standard of Review**

All alleged jury-charge error must be considered on appellate review regardless of whether it was preserved in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). A jury-charge-claim analysis involves two steps: First, the reviewing court must determine whether the charge is erroneous. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). If it is, then the court must decide whether the appellant was harmed by the erroneous charge. *Id.* There are two standards of review for jury-charge-error claims. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). If a defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Id.* If there was not a timely objection, the record must show "egregious harm." *Id.*

**B. Applicable Law**

Harm is assessed in light of (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of the probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* (citing *Almanza*, 686 S.W.2d at 171). An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on actual harm rather than theoretical harm. *Id.*

Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one. *Id.* Neither party bears the burden to show harm. *Id.*

Sexual assault of a child is a second-degree felony, except that it is a first-degree felony if it involves certain prohibited sexual conduct such as engaging in sexual intercourse with a known descendent by blood or adoption. *See* PENAL §§ 22.011(f), 25.02. The prison sentence range for a person found guilty of a second-degree felony is from two to twenty years, and the prison sentence range for a person found guilty of a first-degree felony is from five to ninety-nine years. *See* PENAL §§ 12.32–.33

## C. No Egregious Harm Caused by Failure to Present § 22.011(f)(2) Incest Provision as Special Issue

The State appears to agree that the trial court erred in not including a separate verdict form for the enhancement. Although the State's confession of error in a criminal case is important and carries great weight, reviewing courts are not bound by it. *Estrada v. State*, 313 S.W.3d 274, 286 (Tex. Crim. App. 2010).

This Court has not previously decided whether incest is a punishment enhancement to a second-degree child abuse offense, or whether it is an element of a first-degree felony offense. Two sister courts have concluded, for example, that bigamy under a different subsection of § 22.011(f) is an essential element of the first-

degree felony offense proved during the guilt/innocence phase of trial rather than a punishment enhancement proved during the punishment phase of trial.[2]

In the present case, the jury was instructed on the statutory incest provision during the guilt/innocence phase, but the verdict form did not contain a separate finding on this provision. We need not resolve whether this provision should have been submitted to the jury as a separate special issue because we conclude that Kohler has not suffered egregious harm.

Here, the jury verdict form read as follows:

> WE, the Jury, find from the evidence beyond a reasonable doubt the defendant, Brian Allan Kohler, guilty of the offense of Sexual Assault of a Child, as charged in the indictment in Cause Number 18-10621-86-F.

The alternative paragraph in the form used the same language but provided the option to find him not guilty.

Kohler thus argues that the verdict form did not permit the jury to find Kohler guilty of the base offense of sexual assault of a child but not guilty of the

---

[2] *See Pearson v. State*, No. 02-18-00360-CR, 2020 WL 5241739, at *5 (Tex. App.—Fort Worth 2020, pet ref'd) (mem. op., not designated for publication) (concluding that the trial court did not err by including the § 22.011(f) instruction in the guilt-innocence charge rather than solely as a punishment issue); *State v. Rousseau*, 398 S.W.3d 769, 776–77 (Tex. App.—San Antonio 2011), *aff'd on other grounds*, 369 S.W.3d 550 (Tex. Crim. App. 2013) (concluding that prohibited bigamous conduct under § 22.011(f) is an element of a first-degree felony offense rather than a punishment enhancement); *see also Oliva v. State*, 548 S.W.3d 518, 530 (Tex. Crim. App. 2018) (outlining factors that weigh in favor of finding that prohibited conduct is a punishment-phase enhancement); *Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (analyzing a similarly structured statute on evading arrest offenses containing an enhancing provision and concluding that proof of a prior conviction for evading arrest is an element of a third-degree felony evading arrest offense rather than a punishment enhancement).

"enhancing" incest provision, causing him egregious harm. We examine the record as a whole in light of the *Almanza* factors to assess harm.

## 1. Entire Jury Charge

In addition to instructing the jury on the offense of Sexual Assault of a Child, the jury charge also recited that "[o]ur law further provides that a person is prohibited from engaging in sexual intercourse with another person the actor knows to be, without regard to legitimacy, the actor's ancestor or descendant by blood or adoption." After the definitions, the charge instructed:

> Now, if you find from the evidence beyond a reasonable doubt that on or about May 21st, 2013, in Kaufman County, Texas, the defendant, Brian Allan Kohler, did then and there intentionally or knowingly cause the penetration of the sexual organ of "Ellis" (a pseudonym), a child who was then and there younger than 17 years of age, by defendant's sexual organ, and Ellis was a person whom the defendant was prohibited from engaging in sexual intercourse under Section 25.02 of the Texas Penal Code, then you will find the defendant guilty of the offense of Sexual Assault of a Child as charged in the indictment.
>
> If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty of the offense of Sexual Assault of a Child as alleged in the indictment in Cause No. 18-10621-86-F.

As the State argues, this charge effectively gave the jury two choices: find the defendant guilty of the first-degree felony incest charge in the indictment or find the defendant not guilty. Including an option to find the defendant guilty of only the second degree felony child abuse charge would have required the jury to find that Ellis was not the biological daughter of Kohler. Kohler does not dispute that Ellis

–26–

is his biological daughter, so it would be nonsensical for the jury to find him guilty of only the second-degree felony offense on these facts.

Even though there was no verdict form for the statutory incest provision of the offense, the jury charge adequately instructed the jury to find Kohler not guilty if they had a reasonable doubt that Kohler committed the offense as alleged in the indictment, which contained the language of the "enhancing" provision. This factor weighs against a determination of egregious harm.

### 2. State of the Evidence, Including Contested Issues and Weight of Probative Evidence

As discussed in issue two, the evidence was legally sufficient to prove that Ellis was the complainant, and evidence in the record identified Ellis by her legal name. At trial, Ellis testified that Kohler was her biological father. Kohler's son, a defense witness, testified that Ellis was his sister. Kohler and his counsel never disputed these facts. This factor weighs against a determination of egregious harm.

### 3. Argument of Counsel

During closing argument, the State reiterated the specific language of the incest provision under § 25.02 of the Penal Code and stated that it was one of the specific facts that the State was required to prove. The State also told the jury during closing argument that Kohler's "relationship to Ellis as the biological father" was not "at issue in this case." Kohler did not object to this statement nor did his closing argument dispute it. In fact, Kohler's attorney also referred to Ellis as Kohler's daughter in his closing argument. Kohler's defense was that the sexual abuse never

–27–

happened—not that Ellis was not his daughter. Under the facts in this case, this factor weighs against a determination of egregious harm.

**4.      Other Relevant Information**

We discern no other materially relevant information.

**5.      Review of the Record as a Whole Does Not Show Egregious Harm**

We conclude that Kohler was not egregiously harmed by the failure of the jury verdict form to include a separate finding for the incest provision. *See also McBride v. State*, No. 03-19-00775-CR, 2021 WL 4995498, at * 5–6 (Tex. App.—Austin Oct. 28, 2021, pet ref'd) (not designated for publication) (determining that defendant was not egregiously harmed by failure to provide jury with separate verdict forms for a finding of "not true" on each punishment enhancement count for prior felonies where the verdict form completed by the jury incorporated the enhancement allegations from the indictment, and defendant acknowledged that he was convicted of both prior felony offenses).

We overrule Kohler's fifth issue.

**V.      No Trial Court Error in Assessing Punishment.**

In his sixth issue, Kohler argues that the trial court erred in assessing Kohler's punishment at eighty years in its judgment because the jury did not make a separate finding of "true" for the enhancing incest provision. Kohler also argues that the first amended indictment stated only that Ellis was a person with whom Kohler was prohibited from engaging in sexual intercourse under § 25.02 of the Texas Penal

Code but did not expressly recite the specific language from that statute at issue in this case—that Kohler was prohibited from engaging in sexual intercourse with Ellis because he knew Ellis was his descendant by blood. Kohler alleges that merely allowing the jury to make a finding on sexual assault "as charged in the indictment" was not sufficient.

Kohler does not argue that the indictment itself was insufficient, and the record does not indicate that Kohler objected to any defect in the indictment in the trial court. *See* CRIM. PROC. art. 1.14(b) (providing that defendant waives right to object to a defect, error, or irregularity of form or substance in an indictment if no such objection is made before the commencement of trial). Rather, Kohler seems to argue that, without an express affirmative finding by the jury on the prohibited incest conduct, the jury was "deprived of the ability to consider the specific enhancement pursued by the State."

Kohler has not cited case law indicating that an express affirmative finding on the enhancing prohibited sexual conduct is required for a first-degree felony sexual assault of a child case, and neither party argues that such a finding should have been entered into the judgment in this case. By contrast, the case law cited by the parties relates to required deadly-weapon enhancement findings by the trier of fact, which must be entered into the judgment by the trial court. *See Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016); *Polk v. State*, 693 S.W.2d 391, 392 (Tex. Crim. App. 1985); *Roots v. State*, 419 S.W.3d 719, 722 (Tex. App.—Fort Worth 2013, pet.

–29–

ref'd). However, to the extent an affirmative finding is required in the present case, under the case law cited by the parties, we conclude that the jury made such a finding on the prohibited sexual conduct. Analogizing, as both parties do, to case law regarding affirmative findings on deadly weapons, we look to the charging instrument, the jury charge, and the jury verdict to evaluate whether the jury made an affirmative finding. *See Duran*, 492 S.W.3d at 746.

The Court of Criminal Appeals has listed several ways in which a court can determine that a trier of fact made an affirmative deadly weapon finding, including when the indictment specifically alleged a "deadly weapon" was used (using the words "deadly weapon") and the defendant was found guilty "as charged in the indictment." *See id.* (citing *Polk*, 693 S.W.2d at 396).

In the present case, the second paragraph of the indictment tracks the language of § 22.011(f)(1)(B) relating to the increase in offense level from a second degree felony to a first degree felony in certain cases of sexual assault under §25.02. The verdict form states that the jury found Kohler guilty of the offense of sexual assault of a child "as charged in the indictment."

These facts would be sufficient to indicate that the jury made an affirmative finding of the prohibited sexual conduct. *See Duran*, 492 S.W.3d at 746. Even though the indictment cross-references § 25.02 of the Texas Penal Code, an examination of the jury charge together with the indictment and the verdict clarifies that the jury was expressly instructed on the language of § 25.02, which prohibits

–30–

sexual conduct with a person's descendant by blood or adoption. Moreover, as previously discussed, Kohler has never disputed that Ellis is his biological daughter, and she and other witnesses testified at trial that she is Kohler's daughter.

We conclude that the trial court's judgment on this issue is in accordance with the jury's finding. We overrule Kohler's sixth issue.

## VI. Fifth Amendment Argument Forfeited

In his seventh issue, Kohler argues that, during closing argument, the State impermissibly commented on his failure to testify in violation of his constitutional right to remain silent. He claims that the trial judge's subsequent jury instruction failed to cure the issue because the State's argument was manifestly improper. However, Kohler's objection at trial did not comport with this argument. Regardless, we disagree that the State commented on Kohler's choice not to testify.

### A. Applicable Law

Both the United States and Texas Constitutions protect a criminal defendant from being compelled to be a witness against himself. U.S. CONST. amend. V; TEX. CONST. art. I, § 10. Further, the code of criminal procedure prohibits counsel from alluding to or commenting on the failure of a defendant to testify. CRIM. PROC. art. 38.08.

To preserve error for appellate review, a defendant must make his complaint to the trial court by a timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the

complaint.  TEX. R. APP. P. 33.1(a)(1)(A).  With some exceptions, a defendant in a criminal case forfeits error, even constitutional error, when he fails to make a timely objection or fails to request proper relief.  *See Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).  Furthermore, the complaint on appeal must comport with the objection at trial.  *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

In addition, to preserve jury argument error for appellate review, the defendant must make an objection, request an instruction to disregard, and make a motion for a mistrial.  *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).  The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury.  *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011).  If a defendant has been given all the relief that he requested at trial, then there is nothing of which to complain on appeal.  *Cook*, 858 S.W.2d at 473.

**B.    Appellate Argument Does Not Comport with Trial Objection; All Requested Relief Obtained**

During the State's closing argument, the following occurred:

| | |
|---|---|
| Prosecutor: | But what I want to point out to you is this charge is sexual assault of a child for the penetration of his penis into her vagina.  And we have proved that beyond a reasonable doubt.  And to be clear, you heard his words. But if we want to play the credibility game, **remember what you have from this man because he had an opportunity to** |

**speak to law enforcement**.  And they want you to think that his rights have been violated, all this.  You wouldn't have the evidence.  You wouldn't have the evidence before you if there was anything unlawful about it, to be clear.

Defense Counsel:  Objection, Your Honor.  May we approach?

Trial Court:  You may.

Defense Counsel:  You cannot testify.

Prosecutor:  No, I'm not.

Trial Court:  I almost got nervous too, but she said—I raised an eyebrow there for a second too.

Defense Counsel:  It's his interview.

Trial Court:  But if you want to, I'll make sure to clear that up that the defendant has an absolute right not to testify.

Defense Counsel:  We'd ask for that.

(Emphasis added.)  After this exchange, the trial court instructed the jury as follows:

Ladies and gentlemen, I'll just instruct you further like it does in the charge.  The defendant does have an absolute right not to testify and you cannot, will not, should not hold that against him for any reason whatsoever.  That burden does not change.  It always stays over here.  All right?

The State's counsel then went on to clarify that she was referring to Kohler's credibility in his interview with the police that had been admitted into evidence.

The record shows that Kohler objected on the basis that the prosecutor was testifying.  However, on appeal, he argues the State impermissibly commented on his failure to testify in violation of his Fifth Amendment constitutional right to

–33–

remain silent. Kohler's trial objection therefore does not comport with his argument on appeal, and he forfeited this argument.

Further, the trial court offered to give an instruction relating to the defendant's right not to testify and Kohler responded that he was asking for that. Kohler did not move for a mistrial. As a result, he obtained all the relief that he requested. Further, Kohler has not shown in the record a basis for rebutting the presumption that the jury honored the trial court's instructions.

Regardless, it is reasonably clear from the record that the State was referring to Kohler's custodial interview statements, which had been admitted into evidence. Therefore, the State was not commenting on Kohler's failure to testify at trial but rather was commenting on his statements prior to trial, which had been admitted into evidence. *See Randolph v. State*, 353 S.W.3d 887, 893 (Tex. Crim. App. 2011) (stating no error occurs where evidence in the record supported the prosecutor's remarks); *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004) (stating that when a defendant makes a statement which is admitted into evidence, the State's reference to the statement and comparison between the statement and the other evidence collected is not a comment on the defendant's failure to testify or his right to remain silent); *Graves v. State*, No. 02-22-00100-CR, 2023 WL 2607642 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) (mem. op., not designated for publication.) (noting that "when a defendant's statements are in evidence, it is fair

game for the State to comment on those statements and not run afoul of the prohibition of commenting on the defendant's failure to testify.").

We overrule Kohler's seventh issue.

## VII. Correction of Judgment

Although neither party raises the issue, our review of the record indicates that the judgment contains errors that should be corrected. This Court has the power to modify a judgment to speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd) (en banc). This authority is not dependent upon a request by any party, and we may reform a judgment sua sponte. *Asberry*, 813 S.W.2d at 529-30; *Garcia-Hernandez v. State*, No. 05-08-00735-CR, 2009 WL 824766, at *4 (Tex. App.—Dallas Mar. 31, 2009, no pet.) (mem. op., not designated for publication).

The first amended indictment in this case states that the alleged offense is "Sexual Assault Child Enhanced," a "1st Degree Felony." It further presented that Ellis was a person with whom Kohler was prohibited from engaging in sexual intercourse under § 25.02 of the Texas Penal Code. The verdict indicates that the jury found Kohler guilty of "Sexual Assault of a Child Enhanced" and assessed punishment at 80 years in prison and a $10,000 fine. However, the judgment in the case lists the degree of the offense as a second-degree felony. It also does not contain an affirmative finding of family violence.

The court was required to make and enter in the judgment an affirmative finding of family violence in this case. Article 42.013 of the Code of Criminal Procedure provides that if a trial court determines an offense under Title 5 of the Penal Code involved family violence, as defined by § 71.004 of the Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case. CRIM. PROC. art. 42.013; *see also Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006). Section 71.004(1) of the Family Code provides in part that "[f]amily violence" means "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault[.]" TEX. FAM. CODE ANN. § 71.004(1). Biological children are "family." *See id.* at § 71.003.

The court has no discretion in the matter, nor does the prosecutor have the discretion to seek such a finding; the statute requires the trial court to enter the finding. *Floressanchez v. State*, No. 05-22-01073-CR, 2023 WL 6457326, at *5 (Tex. App.—Dallas Oct. 4, 2023, no pet.) (mem. op., not designated for publication); *Daraghmeh v. State*, No. 05-13-01127-CR, 2014 WL 7269924, at *5 (Tex. App.—Dallas Dec. 22, 2014, no pet.) (not designated for publication); *see also Garcia-Hernandez*, 2009 WL 824766, at *4.

In the present case, Kohler was convicted of first-degree felony sexual assault of a child. *See* TEX. PEN. CODE ANN. §§ 22.011(a)(2), (f)(1)(B), 25.02(a)(1). The undisputed evidence at trial demonstrated that Ellis is Kohler's biological daughter.

Thus, Kohler's sexual assault of Ellis constitutes family violence. *See, e.g., Butler,* 189 S.W.3d at 302. Consequently, on this record, we conclude that the trial court was statutorily obligated to enter an affirmative finding of family violence in its judgment of conviction for this offense. *See Floressanchez*, 2023 WL 6457326, at *5; CRIM. PROC. art. 42.013.

Accordingly, we modify the trial court's judgment to correct these errors as follows:

- The Degree of Offense is modified from "2nd Degree Felony" to "1st Degree Felony.
"
- The Statute for Offense is modified to state "22.011(a)(2), (f)(1)(B)."

- After the statement "Furthermore, the following special findings or orders apply," the following sentence is added: "The Court affirmatively finds that the offense involved family violence."

## VIII. Conclusion

We conclude that the evidence was sufficient to support Kohler's conviction. In addition, the trial court did not err when it denied Kohler's motion to suppress the recorded phone call. We also conclude that Kohler did not suffer egregious harm due to a jury charge error, if any, and the trial court did not err in assessing punishment at eighty years in its judgment. Kohler forfeited his Fifth Amendment argument regarding any improper comments about his choice not to testify at trial and, regardless, the State's comments were not improper. In addition, we modify the judgment to correct the errors set forth above.

We affirm the trial court's judgment as modified.

The trial court is directed to prepare a reformed judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate v State*, 649 S.W.3d 240, 244–45 (Tex. App.—Dallas 2021, no pet.).

/Emily Miskel/
EMILY MISKEL
JUSTICE

Do Not Publish
Tᴇx. R. Aᴘᴘ. P. 47
220939F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | |
|---|---|
| BRIAN ALLAN KOHLER, Appellant | On Appeal from the 86th Judicial District Court, Kaufman County, Texas |
| No. 05-22-00939-CR        V. | Trial Court Cause No. 18-10621-86-F. |
| THE STATE OF TEXAS, Appellee | Opinion delivered by Justice Miskel. Justices Nowell and Kennedy participating. |

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

(1) The Degree of Offense is modified from "2nd Degree Felony" to "1st Degree Felony

(2) The Statute for Offense is modified to state "22.011(a)(2), (f)(1)(B)."

(3) After the statement "Furthermore, the following special findings or orders apply," the following sentence is added: "The Court affirmatively finds that the offense involved family violence."

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 2nd day of July, 2024.